**SO ORDERED.**

**SIGNED this 20 day of August, 2008.**



_____
ROBERT E. NUGENT
UNITED STATES CHIEF BANKRUPTCY JUDGE
_____

DESIGNATED FOR PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CAROL J. HOSS and TERRY L. HOSS, | ) | Case No. 08-10365 |
| | ) | Chapter 13 |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| MARCOS ARROYO, | ) | Case No. 07-12779 |
| JENNIFER RENEE ARROYO, | ) | Chapter 13 |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM OPINION**

These two chapter 13 cases focus the Court squarely on a frequently litigated BAPCPA[1]

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, enacted April 20, 2005 and generally effective October 17, 2005. Pub. L. 109-8 (Apr. 20, 2005). Unless otherwise indicated, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101

1

issue, that being whether an above-median income debtor who seeks to cram-down or strip off a secured creditor in chapter 13 can deduct from current monthly income on Line 47 of Form B22C, the average future monthly payments to the secured creditor based upon the original, unmodified contract or only the amount equal to what debtor intends to actually pay under the plan. This calculation directly affects the amount of projected disposable income a debtor must pay to unsecured creditors under 11 U.S.C. § 1325(b)(1)(B) and requires the Court to interpret the phrase "amounts scheduled as contractually due" in 11 U.S.C. § 707(b)(2)(A)(iii) to determine a debtor's disposable income.[2]

These two cases come before the Court on the Trustee's objection to confirmation of the debtors' chapter 13 plans because the debtors propose to deduct as expenses the secured debt payment amount under their respective contracts.[3] The Court has jurisdiction over these contested, core proceedings under 28 U.S.C. § 1334(b) and § 157(b)(2)(L). In both cases, the parties submitted the matter to the Court on stipulated facts[4] and briefs.[5] The chapter 13 trustee Laurie B. Williams appears by her attorney Christopher T. Micale. Debtors Arroyo appear by their attorney William H. Zimmerman. Debtors Hoss appear by their attorney Larry L. Livengood.

Factual Background

In both of these cases the debtors propose plan treatment of secured creditors involving the

---

*et seq.*, as amended by BAPCPA.

[2] *See* § 1325(b)(2) and (3).

[3] No. 07-12779 [*Arroyo*], Dkt. 17 and No. 08-10365 [*Hoss*], Dkt. 29.

[4] *Arroyo,* Dkt. 26 and *Hoss,* Dkt. 42.

[5] *Arroyo,* Dkt. 27 and 28 and *Hoss*, Dkt. 44 and 45.

2

cram-down of loans or stripping off of liens. Under the debtors' plans, a portion of the affected creditors' claims would be treated as unsecured claims. The debtors are above-median income debtors requiring the calculation of disposable income under § 1325(b)(3).

**Arroyo**

In *Arroyo*, debtors seek to deduct from their disposable income their contract payments on a 2007 GMC Yukon truck secured to Wells Fargo under § 707(b)(2)(A)(iii) as it is made applicable to the projected disposable income test set out in § 1325(b)(1)(B).

Debtors filed a plan that provides for the cram-down of Wells Fargo's car loan that is secured by the Yukon under § 1325(a)(5). Wells Fargo's loan is not a purchase money loan and is therefore not eligible for 910-day car loan treatment under § 1325(a)(*)'s hanging paragraph. The Wells Fargo loan was refinanced in November of 2006 with monthly payments running for 72 months. The amount refinanced was $63,207. Debtors propose to cram this loan down to the current value of the Yukon which is stipulated to be $35,000. Under their plan, debtors propose to repay this amount, plus interest at the rate of 7.78 per cent per annum for a total payment over the life of the plan of $41,651. The parties stipulate that the average monthly payment on this amount over the life of the plan is $694.20.[6] This is the amount that the trustee contends debtors are entitled to deduct on Line 47. The balance of Wells Fargo's loan would be treated as an unsecured claim.

Despite planning to cram Wells Fargo down, when debtors completed their Form B22C, they sought to deduct from current monthly income the contractual payment amount equal to one-sixtieth

---

[6] This figure is derived from § 707(b)(2)(A)(iii)(I) which states that the "average monthly payments on account of secured debts shall be calculated as the sum of – (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition . . ." [*i.e.* $41,651 ÷ 60].

3

of $63,207 or $958 per month on Line 47.[7] The trustee has objected to this deduction, arguing that allowing this deduction would serve to minimize debtors' disposable income to the detriment of the unsecured creditors. As filed, debtors' Form B22C posits monthly disposable income of $14.48. Were they only permitted to deduct on Line 47 what they actually propose to pay Wells Fargo, one-sixtieth of $41,651, their disposable income figure would increase by approximately $250 per month.

**Hoss**

In *Hoss*, the debtors occupy a homestead to which once attached four mortgages. During the pendency of their case, however, the Court has entered orders stripping off the second, third and fourth mortgages because no equity was shown to support any mortgages subordinate to the first lien.[8] Debtors have made no mortgage payments on these three mortgages since filing their case. They intend to retain their homestead and pay the first mortgage according to the terms of the note. Like the Arroyos, they have included on Line 47 of their B22C form all of the payments they would have made on the stripped-off mortgages, $897 per month,[9] as well as those they intend to make on

---

[7] Although the $958 figure is clearly the amount shown as the average monthly payment over a 60-month period on Line 47, $63,207 divided by 60 does not equal $958. The stipulations indicate that the contractual monthly payment to Wells Fargo were in the amount of $1,249 over a 72-month period beginning December of 2006. The discrepancy in the average monthly payment amount appears to be due to the amount of Wells Fargo claim as of the date of filing, some $57,797, rather than the original amount refinanced.

[8] At an evidentiary hearing held May 13, 2008, the Court heard valuation evidence concerning the debtors' home. Based upon that unrefuted testimony, the Court found the value of debtors' home to be $70,000. Since the first mortgage balance was some $73,000, the second, third and fourth mortgages were wholly unsecured, and the Court ruled they could be stripped off. *See Hoss,* Dkt. 40, 37 and 36, Orders granting debtors' motions to strip off mortgage liens.

[9] The monthly payments on the stripped-off mortgages were as follows: second mortgage (Homecomings Financial) - $482; third mortgage (Sunflower Bank) - $215; and fourth mortgage (Bank of America) - $200.

4

the first mortgage. This results in their projected disposable income being a negative $494. Were these mortgage payment deductions omitted from Line 47, debtors monthly disposable income on Line 59 would amount to $402 per month.

Analysis and Conclusions of Law

The ability of above-median income debtors to deduct future average monthly secured debt payments on Line 47 from current monthly income to determine chapter 13 debtors' projected disposable income arises in a number of varying but related situations: where the debtors have surrendered the property to the creditor; where the debtors have stripped off liens on the property; and where the debtors have crammed down the lien to the value of the collateral. These companion cases involve only the latter two situations, but all of these scenarios share the common question whether this expense deduction is permitted when the debtors will have no future legal obligation to repay the debt under the terms of the plan and upon its completion. This Court has yet to rule on this issue and the bankruptcy courts that have ruled on the issue are divided. Some courts hold that debtors may deduct the entire contractual payments (as determined by the debt instrument) from current monthly income while others hold that debtors may only deduct the actual secured debt payments (as determined by the plan) they anticipate making as of the effective date of the plan.

This is yet another legal conundrum produced by Congress' injecting into the chapter 13 projected disposable income test certain aspects of the chapter 7 means test for determining abuse. Section 1325(b)(1)(B) provides that if the trustee objects to a chapter 13 plan's treatment of the unsecured creditors, the debtor must provide for the commitment of all his projected disposable income, as of the effective date of the plan, to the payment of those creditors pro rata. Section 1325(b)(2) defines disposable income as "current monthly income," a defined term under §

5

110(10A) and determined as of the date of filing, adjusted by an amount "reasonably necessary to be expended" for the maintenance and support of the debtor and his dependents. For above-median income debtors, the amount "reasonably necessary to be expended" is "determined in accordance with subparagraphs (A) and (B) of § 707(b)(2)."[10] Section 707(b)(2), the heart of the chapter 7 means test, provides at subparagraph (A)(iii) that the debtor's average monthly payments on secured debt be calculated as the "total of all *amounts scheduled as contractually due* to secured creditors in each month of the 60 months" following the petition date, plus any additional payments to be made to those secured creditors in order to retain possession of the property securing the debts. At issue here is what "amounts scheduled as contractually due" means in the context of a chapter 13 debtor's plan and the projected disposable income test of § 1325(b)(1)(B).

Many of the courts deciding this question in the same or similar contexts have concluded that this phrase refers to the amounts scheduled to be paid under the creditor's contract (*i.e.* the debt instrument) at the time of filing the bankruptcy petition, before that contract is modified by the plan's confirmation.[11] Among the cases so holding are two Kansas bankruptcy decisions, only one

---

[10] § 1325(b)(3).

[11] The majority view allowing the full deduction per the original contract at the time of the petition, whether or not the secured payments will be actually made, originated with *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga. 2006). *Walker* was a chapter 7 case and involved the post-petition surrender (repossession) of the property securing the debt. Many of the cases following *Walker's* lead on the deductibility of future secured debt payments are also chapter 7 cases where the United States Trustee seeks to dismiss the case as presumptively abusive and applies the chapter 7 means test. In nearly all of these cases, the debtors indicated an intent to surrender the collateral securing the debt in their chapter 7 filing. *See e.g. In re Lindstrom*, 381 B.R. 303 (Bankr. D. Colo. 2007) (chapter 7 case; intent to surrender vehicle); *In re Makres*, 380 B.R. 30 (Bankr. N.D. Okla. 2007) (chapter 7 case; intent to surrender mortgaged property); *In re Galyon*, 366 B.R. 164 (Bankr. W.D. Okla. 2007) (chapter 7 case; intent to surrender mortgaged property); *In re Hayes*, 376 B.R. 55 (Bankr. D. Mass. 2007) (chapter 7 case; intent to surrender real property); *In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007) (chapter 7 case; intent to

of which is a chapter 13 case, *In re Allen*.[12] The other, *In re Palm*, is a chapter 7 case and, as will be discussed below, is of limited application here.[13] There are no Tenth Circuit Bankruptcy Appellate Panel or Court of Appeals decisions upon which to rely.[14] Yet, a growing number of courts contend that the phrase, viewed in a chapter 13 context, really refers to the amounts the debtor intends to pay under the plan and is determined at confirmation.[15] Both views hang their hats on "plain language" interpretation, though what is "plain" about this statutory language escapes this Court. Some review of each school of thought is worthwhile.

Secured Debt Payment Deduction Allowed in Full

---

surrender home); *In re Kelvie*, 372 B.R. 56 (Bankr. D. Idaho 2007) (chapter 7 case; intent to surrender mortgaged property); *In re Kogler*, 368 B.R. 785 (Bankr. W.D. Wis. 2007) (chapter 7 case; intent to surrender home and vehicle); *In re Longo*, 364 B.R. 161 (Bankr. D. Conn. 2007) (chapter 7 case; intent to surrender residence and timeshare); *In re Benedetti*, 372 B.R. 90 (Bankr. S.D. Fla. 2007) (chapter 7 case; intent to surrender leased vehicle).

[12] 2008 WL 451053, No. 07-41327 (Bankr. D. Kan. Feb. 15, 2008).

[13] 2007 WL 1772174, No. 06-20551 (Bankr. D. Kan. June 19, 2007). In *Palm*, the chapter 7 debtors surrendered a residence and vehicle subject to security interests after filing their petition. In denying the United States Trustee's motion to dismiss for presumptive abuse under § 707(b)(2), the bankruptcy court held that debtors could deduct future payments on these secured claims, notwithstanding debtors' surrender of the property securing the debts. The bankruptcy court concluded that the phrase "scheduled as contractually due" means the payments owed to secured creditors under contract as of the petition date. This Court believes *Palm* to have limited application in the context of a chapter 13 case and the calculation of projected disposable income under § 1325(b)(1)(B).

[14] The lone appellate decision on this issue is *In re Rudler*, 388 B.R. 433 (1st Cir. BAP 2008). That court held that debtors were entitled to deduct their secured debt payments that they were contractually obligated to make on the petition date, even though debtors intended to surrender the underlying collateral. The means test, as applied in Chapter 7 to determine whether a case is presumptively an abuse, is a mechanical formula based on a snap shot of debtor's situation as of the petition date.

[15] *See In re McPherson*, 350 B.R. 38 (Bankr. W.D. Va. 2006); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007); *In re Long*, __ B.R. __, 2008 WL 1883473 (Bankr. E.D. Tex. 2008); *In re Koch*, __ B.R. __, 2008 WL 2910574 (Bankr. N.D. N.Y. 2008).

7

The "Full Deduction Courts" hold that debtors are permitted to deduct on Line 47 the secured creditor payments they contracted to make, whether or not the debtors intend to retain the property securing those debts; however, these courts, led by *In re Walker*,[16] generally express this view in the context of chapter 7 cases while applying the chapter 7 means test to determine whether certain debtors' filings are presumptively abusive.[17] Judge Karlin's opinion in *In re Allen* provides a comprehensive survey of opinions reported. She comments that courts adopting this view begin their analysis by examining the plain meaning of § 707(b)(2)(A)(iii). She notes that these courts conclude that the "common meaning" of "as contractually due" is that the debtor is legally obligated under the contract, in this case, a promissory note, to make a payment in a certain amount, with a certain amount of interest, for a set number of months into the future."[18] These courts further note that a debtor's contractual obligations to his creditors do not cease when he surrenders collateral or strips off a debt, rather these obligations only end at discharge and, until then, remain "contractually due." These courts also point out that had Congress intended to limit this deduction to what debtors propose to pay in their chapter 13 plans, they would have said so. The use of the term "contractually due" suggests to these courts a meaning other than "payments due under the plan."

The Full Deduction Courts' approach has the advantage of applying commonly held meanings to the words contained in the various subsections, but it suffers from two flaws. First, insisting that debtors may deduct these phantom payments that they have no intention of making from disposable income injects a certain alternative reality into a process that is supposedly designed

---

[16] 2006 WL 1314125 (Bankr. N.D. Ga. 2006).

[17] *See* note 11, *supra.*

[18] 2008 WL 451053 at *4.

8

to determine what debtors are able to pay to unsecured creditors. Second, and more importantly, the Full Deduction Courts do not give meaning to the words "as of the effective date" in § 1325(b)(1) in their decisions. These words require that disposable income in a chapter 13 case be determined when the plan is confirmed, not when the petition is filed.[19]

<u>Full Secured Debt Payment Deduction Disallowed</u>

Other courts adopt a different rationale. These "Actual Payment Deduction Courts" are divided, too, depending on whether the case in question arises in chapter 7 or chapter 13. In *In re Skaggs*,[20] the bankruptcy court disallowed secured debt payment deductions on a surrendered mobile home and a vehicle that debtors anticipated being repossessed. In chapter 7 cases, these courts interpret the words "scheduled as contractually due" to refer to the long-standing meaning of "scheduled as" under the Bankruptcy Code, not the common dictionary definition of "scheduled" as the Full Deduction Courts suggest, but rather how a debt is identified on a debtor's bankruptcy schedules.[21] Focusing on the "scheduled as" language, these courts conclude that the debtors' schedules and statements "form the basis from which the Court should determine whether a debt is 'scheduled as contractually due'."[22] Where debtors have indicated their intent to surrender the collateral securing the debt on their Statement of Intention, the secured debt payments are not "scheduled as contractually due." The *Skaggs* reasoning has been followed by a few courts in

---

[19] Indeed, at least one court on the majority side of the question, suggests that the phrase "scheduled as contractually due" may carry different meanings in a chapter 7 case and a chapter 13 case. *See In re Nockerts,* 357 B.R. 497, 504 (Bankr. E.D. Wis. 2006).

[20] 349 B.R. 594 (Bankr. E.D. Mo. 2006).

[21] *Id* at 599.

[22] *Id.*

9

chapter 7 cases, but it clearly is the minority view.[23]

> Future Secured Debt Payment Deduction in Chapter 13

In chapter 13 cases, the Actual Payment Deduction courts *disallow* a secured debt payment deduction with respect to collateral that has been surrendered or secured debts that have been crammed down or liens that have been avoided. By granting the full deduction, *In re Allen* and cases like it fall into the minority camp.[24] Many other courts follow the logic of *In re McPherson*[25] and disallow the full deduction in chapter 13.[26] *McPherson* is factually similar to the instant cases and illuminates why the full deduction should be disallowed in these circumstances:[27]

---

[23] *See e.g., In re Harris,* 353 B.R. 304 (Bankr. E.D. Okla. 2006); *In re Ray*, 362 B.R. 680 (Bankr. D. S.C. 2007); *In re Burden*, 380 B.R. 194 (Bankr. W.D. Mo. 2007); *In re Masur,* 2007 WL 3231725 (Bankr. D. S.D. 2007); *In re Naut*, 2008 WL 191297 (Bankr. E.D. Pa. 2008).

[24] *See also, In re Quigley*, __ B.R. __, 2008 WL 2557560 (Bankr. N.D. W. Va. 2008); *In re Degrosseilliers,* 2008 WL 2725808 (Bankr. E.D. Va. 2008); *In re Austin*, 372 B.R. 668 (Bankr. D. Vt. 2007); *In re Burmeister*, 378 B.R. 227 (Bankr. N.D. Ill. 2007); *In re Oliver*, 2006 WL 2086691 (Bankr. D. Ore. 2006).

[25] 350 B.R. 38 (Bankr. W.D. Va. 2006).

[26] *See In re Koch,* __ B.R. __, 2008 WL 2910574 (Bankr. N.D.N.Y. 2008) (surrender of three vehicles); *In re Long,* __ B.R. __, 2008 WL 1883473 (Bankr. E.D. Tex. 2008) (surrender of vehicle); *In re Suess,* 387 B.R. 243 (Bankr. W.D. Mo. 2008) (surrender of mortgaged property); *In re Van Bodegom Smith,* 383 B.R. 441 (Bankr. E.D. Wis. 2008) (surrender of homestead and relocation out-of-state); *In re Coleman,* 382 B.R. 759 (Bankr. W.D. Ark. 2008) (surrender of vehicle); *In re Spurgeon,* 378 B.R. 197 (Bankr. E. D. Tenn. 2007) (surrender of mobile home); *In re Sackett,* 374 B.R. 70 (Bankr. W.D. N.Y. 2007) (mortgage lien avoided); *In re McGillis*, 370 B.R. 720 (Bankr. W.D. Mich. 2007) (surrender of timeshare and avoidance of second mortgage under plan); *In re Love*, 350 B.R. 611 (Bankr. M.D. Ala. 2006) (surrender of mobile homes, vehicle, and motorcycle); *In re Edmunds,* 350 B.R. 636 (Bankr. D. S.C. 2006) (surrender or cram-down of vehicles); *In re Crittendon*, 2006 WL 2547102 (Bankr. M.D. N.C. 2006) (surrender of collateral).

[27] Like the debtors in *Arroyo*, the debtors' plan in *McPherson* bifurcated the $2,216 claim of Best Buy into secured and unsecured portions by cramming down the Best Buy claim to $100, the value of the computer securing Best Buy's loan. 350 B.R. at 40. *See* § 1325(a)(5).

10

The term "contractually due," however, does not carry the same meaning in a chapter 13 case as in a chapter 7 case. The chapter 13 plan constitutes a new agreement between the debtor and each secured creditor. A debtor's obligations under the plan are substituted for his or her obligations under the original contract with each secured creditor.[28]

* * *

The term "amounts contractually due," as used in the context of this chapter 13 case, cannot refer to amounts due under the Best Buy Contract because there are no amounts contractually due in the future based on that contract. The Debtors' only obligation to Best Buy on account of the secured portion of its claim is to make six payments in the amount of $18.20 each. It is those payments that form the basis for the deduction from income.[29]

The *McPherson* court concluded that debtors' arguments for the full deduction focused only on § 707(b)(2) and ignored the language of § 1325(b). Thus, the Actual Payment Deduction courts recognize a distinction between using the means test in a chapter 7 case to determine whether abuse should be presumed and using the means test in a chapter 13 to determine disposable income. These courts note that the date upon which disposable income is to be projected is the effective date of the plan (generally the confirmation date) and not the filing date (as would be the case in a chapter 7 case under § 101(10A) and § 707(b)(2)(A)(iii)(I)).[30]

These courts also contend that, because the determination date is the effective date of the plan, they must consider the contract between the debtor and the creditor as it has been or will be altered by the confirmed plan. They take a "snapshot" of the above-median debtor's condition, not

---

[28] 350 B.R. at 46.

[29] *Id.* at 47.

[30] *Sackett*, 374 B.R. at 73 (Mortgagee whose mortgage lien had been avoided was not a secured creditor as of the effective date of the plan and therefore no secured debt payment deduction was permissible); *Spurgeon*, 378 B.R. at 201 (where debtor proposes to surrender mobile home under his plan, the amounts that would otherwise be due under the contract will no longer be scheduled as contractually due); *Van Bodegom Smith*, 383 B.R. at 451-52 (under § 1325(b)(1)(B) a debtor's projected disposable income is determined as of the effective date of the plan); *Suess*, 387 B.R. at 247-48; *Crittendon*, 2006 WL 2547102 at *3.

11

at the date of the petition, but at the effective date of the plan.[31] These courts also note that in chapter 13, a debtor's plan is a new contract with the creditors and therefore, may deduct secured debt payments only to the extent the debtors are treating these creditors as secured creditors in their plans.[32] Admittedly, the flaw in this argument is that, while § 1325(b)(1) makes it very clear that a debtor's disposable income should be projected at the time of confirmation, one feels a little stretched by the interpretation of the "scheduled as contractually due" language as arising from the plan and not the original debt instrument.

Equally troubling is the apparent conflict between § 1325(b)(1)'s use of "effective date" as the time to determine disposable income and § 707(b)(2)(A)(iii)(I)'s use of the words "following the date of the petition" as the time to determine the average monthly payments on secured debt.[33] Presumably, canons of construction resolve this issue by mandating that a court give the chapter 13 language priority in a chapter 13 case.[34] Maybe the drafters of this law assumed that all secured debt

---

[31] Recently, one bankruptcy court has rejected both "snapshot" dates for determining projected disposable income. In *In re Gonzalez,* __ B.R. __, 2008 WL 2492162, *10 (Bankr. S.D. Tex. 2008), the court observed that the projection of disposable income in a chapter 13 case is less a static snapshot than it is "a saga."

[32] *McPherson,* 350 B.R. at 46; *Edmunds*, 350 B.R. at 645; *Coleman*, 382 B.R. at 763 (The adjustments that are required under the chapter 13 means test relate to the secured debts the debtor intends to keep and pay for under his proposed chapter 13 plan); *Suess,* 387 B.R. at 248. (In a chapter 13 case, debtor's plan modifies the arrangement between the debtor and the creditor; it creates a new contract with new provisions for payment of the claim.); *Van Bodegom Smith*, 383 B.R. at 450 (In chapter 13, amounts "scheduled as contractually due" means amounts due under the chapter 13 plan as of the effective date of that plan); *Crittendon*, 2006 WL 2547102 at *4.

[33] *See Coleman*, 382 B.R. at 763 (Section 1325(b)(2)(A) refines the amounts reasonably necessary to be expended to reflect only payments that first become payable after the petition is filed to more accurately reflect the debtor's disposable income in relation to a proposed plan.).

[34] *See Edmond v. United States,*, 520 U.S. 651, 657, 117 S. Ct. 1573, 137 L.Ed. 2d 917 (1997) (Where a specific provision conflicts with a general one, the specific governs, citing

12

payments would arise from non-modifiable home and purchase money loans. Clearly they did not anticipate that many debtors would surrender collateral or have the ability to cram down its value. In any event, the Court believes that in chapter 13 cases, bankruptcy courts are tasked to make as accurate of a projection of debtor's disposable income as they can with the information at hand at confirmation.

Left with these troubling choices of how to interpret this awkwardly-designed language, this Court opts to resolve the conflict by attempting, to the extent possible, to honor the obvious Congressional preference that chapter 13 debtors pay their unsecured creditors what they are able. In short, the Court concludes after reading § 1325(b)(1) in concert with § 707(b), that Congress intended courts to project a debtor's disposable income in a chapter 13 case at the time of confirmation. The Court also agrees with *McPherson* and its progeny that the amounts "contractually due" means the secured debt payments as modified by the plan. At least with respect to above-median debtors, courts are required to apply the § 707(b)(2) means test to determine *the amounts* that can be deducted from current monthly income. As such, § 707(b)(2) operates in chapter 13 to limit the amount of expenses that may be deducted from current monthly income.[35]

---

*Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 64 L.Ed. 2d 381 (1980)). *See also, In re Nobelman,* 129 B.R. 98 (N.D. Tex. 1991), *aff'd Nobelman v. American Sav. Bank,* 408 U.S. 324 (1993) (More specific provision of § 1322(b)(2) controls over general provision of § 506(a) to prevent modification of an undersecured home mortgage to the fair market value of the mortgaged property).

[35] *See Long*, 2008 WL 1883473 at *5-6 (Section 1325(b)(3)'s requirement that amounts reasonably necessary to be expended be determined "in accordance with" the means test of 707(b)(2) did not reference the means test to define, but rather to limit, above median income debtors' expenses); *McGillis*, 370 B.R. at 730; *Gonzalez,* 2008 WL 2492162 at *7 (Section 1325(b)(3)'s use of "shall" refers to "amounts," not determination of whether an expenditure should or should not be allowed in the first place. Allowed expenditures are defined in § 1325(b)(2)(A)-(B)).

13

Secured debt payments, as set out above, are to be determined as of the effective date under § 1325(b)(1) and § 707(b)(2)(A)(iii).

The Court believes that its disallowance of a deduction for secured debt payments that have been modified in a chapter 13 plan is more in tune with the forward-looking view of projecting disposable income expressed by the Tenth Circuit Bankruptcy Appellate Panel in *In re Lanning*.[36] Although *Lanning* involved the income side of the disposable income equation, the same rationale may be applied to projecting expenses.[37] The Court respectfully disagrees with Judge Karlin's statement in *Allen* that bankruptcy courts are constrained from examining a debtor's future secured debt payments when determining disposable income because of the presence of the means test.[38] As noted by the bankruptcy court in *McGillis*:

> Courts have no choice now but to use the debtor's average historical earning to calculate the income component of Section 1325(b) disposable income because that is how BAPCPA defines "current monthly income." However, Congress elected not to impose a similar definitional constraint upon the calculation of the expense component. Rather it simply left the deduction of all expenses, whether they be for maintenance and support, charity, or business, to "those amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2). . . . Congress repeated in Section 1325(b)(3) the very same phrase that it had already used to describe permissible deductions in Section 1325(b)(2): that is, only those deductions that are "reasonably

---

[36] 380 B.R. 17 (10th Cir. BAP 2007). *See Gonzalez*, 2008 WL 2492162 at *9-10 (criticizing the snapshot view of disposable income).

[37] The word "projected" modifies "disposable income" in § 1325(b)(1)(B). The definition of disposable income contains both an income and expense component. Disposable income is defined in § 1325(b)(2) as current monthly income received by the debtor "less amounts reasonably necessary to be expended" for the maintenance or support of debtor or debtor's dependents. Thus, the word "projected" modifies both the income and expense side of the disposable income equation for purposes of § 1325(b)(1)(B). *See McPherson*, 350 B.R. at 43; *Edmunds*, 350 B.R. at 643. *See also, Gonzalez*, 2008 WL 2492162 at *8 , *14 ("The Court discerns no statutory or logical basis for calculating projected expenditures differently from projected current monthly income.").

[38] 2008 WL 451053 at *7 n. 31.

14

necessary to be expended." Indeed, this is the same phrase that was used to describe permissible support and maintenance expenses prior to BAPCPA. However, the 2005 amendments did elaborate upon this familiar concept by imposing yet another limitation, that being that the deductions claimed by the above-median-income debtor as reasonably necessary must also "be determined in accordance with subparagraphs
(A) and (B) of section 707(b)(2) . . .".[39]

Finally, this Court believes that the "forward-looking term[s]" in the statute that *Allen* found lacking,[40] do in fact exist in § 1325(b). In addition to the forward-looking modifier "projected" in § 1325(b)(1)(B) as applied in *Lanning*, the definition of disposable income itself includes language that is couched in the future. Section 1325(b)(2) states, in relevant part: ". . . the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary *to be expended* – (A)(I) for the maintenance or support of the debtor . . . ." The emphasized language is carried over to § 1325(b)(3): "Amounts reasonably necessary *to be expended* under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2) . . . ." As noted in *McPherson*, the "to be expended" phrase indicates that the amounts to be deducted as secured debt payments are amounts that will be paid in the future as provided in the debtor's plan.[41]

---

[39] 370 B.R. at 729.

[40] 2008 WL 451053 at *7.

[41] 350 B.R. at 45 ("An amount, the payment of which is never contemplated, cannot be an amount that is to be paid in the future."). *See also, Spurgeon*, 378 B.R. at 201-02 (Where chapter 13 plan provides for surrender of collateral, amounts that would otherwise be due under the contract will no longer be scheduled as contractually due to a secured creditor.); *Edmunds*, 350 B.R. at 645 (Interpretation that secured debt deduction may be taken only to the extent that debtors are treating those creditors as secured creditors scheduled for payment by debtors in their chapter 13 plan is consistent with Congress's instruction in § 1325(b)(3) that debtors should determine their disposable income by reducing their income according to those expenses "to be expended.").

15

The expense amounts deductible from current monthly income under § 1325(b)(2) are also modified by the phrase "reasonably necessary . . . for the maintenance or support of the debtor . . ." The Court agrees with *McPherson*'s assessment that "[p]ayments that a debtor does not propose to make during the pendency of the plan and that a debtor is not required to make under the plan cannot be said to be reasonably necessary for the support of that debtor."[42] *McGillis* correctly points out that "reasonably necessary" language was found in the Bankruptcy Code prior to BAPCPA, and survived BAPCPA, even for above-median income debtors.[43]

> . . . Section 1325(b)(3) should not be interpreted as categorically substituting the Section 707(b)(2) expense restrictions for the "reasonably necessary" expense requirement already imposed by Section 1325(b)(2). Rather, it should be interpreted as offering a further guideline for ensuring that the expenses claimed by an above-median-income debtor are reasonably necessary. Put differently, Section 1325(b)(3) imposes the same requirement upon an above-median-income debtor as it does upon all other debtors: amounts claimed as expenses under Section 1325(b)(3) must in fact be ultimately expended. . . . However, Section 1325(b)(3) imposes upon an above-median-income debtor the further requirement that all planned expenditures must also agree with the expense limitations of Sections 707(b)(2)(A) and (B).
>
> \* \* \*
>
> Consequently, it is all well and good that Section 707(b)(2)(A)(iii) itself may permit Debtors in this instance the opportunity to deduct another $839.00 from their current monthly income on account of their second mortgage and their Florida timeshare even though they are above-median-income debtors. However Section 1325(b), not Section 707, ultimately controls the determination of disposable income for purposes of plan confirmation under Chapter 13, and that section permits Debtors to deduct only those expenditures that are reasonably necessary for their future support and maintenance. Obviously, phantom payments for the Florida timeshare and the second mortgage do not meet this criteria.[44]

---

[42] 350 B.R. at 44-45.

[43] 370 B.R. at 729. *See also*, §§ 1325(b)(2) and (b)(3).

[44] 370 B.R. at 730. *See also, Long*, 2008 WL 1883473 at \*5-6 (Section 1325(b)(3)'s reference to § 707(b)(2)'s utilizes the means test standards *"to limit, not to define,"* the amounts reasonably necessary to be expended; section 1325(b)(3) does not statutorily allow an above-median income debtor to deduct an expense amount from disposable income which admittedly

16

Where, as here, the debtors in *Arroyo* have bifurcated the creditors' claim into secured and unsecured claims, the debtors will not be required to pay $958 monthly in order to retain their Yukon. Rather, because they have the ability to cram down the Wells Fargo debt, their secured debt payments are substantially lower, freeing up more disposable income for unsecured creditors. Similarly, where the debtors in *Hoss* have stripped off the second, third, and fourth mortgages, debtors intend to retain their homestead, but will only pay one mortgage payment to do so, not four. Some of their disposable income is therefore free for distribution to the unsecured creditors. Only a secured debt payment deduction for the first mortgage is permitted; that is all that is "reasonably necessary to be expended" under the plan in order for debtors to retain their home.

There can be no doubt that the drafters created a statutory jumble by incorporating § 707(b)(2) into § 1325(b)(3), apparently without much thought, and that the un-jumbling lends itself to numerous interpretations, all of which are defensible. This Court concludes that the purpose of including the means test as the yardstick for chapter 13 disposable income was to assure that debtors paid what they could to the unsecured creditors. Accordingly, for all of the reasons discussed above, this Court holds that above-median chapter 13 debtors who intend to retain collateral may only deduct as § 707(b)(2)(A)(iii) secured debt payments on Line 47 of Form B22C the amounts the secured creditors will be paid under the plan as opposed to what the secured creditors' original

---

will not be incurred in the future and will therefore not be "reasonably necessary to be expended."); *Koch*, 2008 WL 2910574 at *3 (phantom expenses that debtor would not have to pay as a result of surrender of collateral were not reasonably necessary for support or maintenance and could not be deducted in calculating projected disposable income); *Coleman*, 382 B.R. at 764 (secured debt deduction disallowed where collateral is surrendered; it is not an amount reasonably necessary to be expended for the support of debtors that first becomes payable after the date the petition was filed.); *Gonzalez*, 2008 WL 2492162 at *15 (Section 1325(b)(3) defines allowed "amounts" for above-median income debtors and eliminates judicial discretion to determine the allowed *amounts* for the projected secured debt payment)

17

Case 07-12779    Doc# 35    Filed 08/20/08    Page 17 of 18

contracts provided. The Court therefore SUSTAINS the objections of the Trustee in these two cases and grants leave to the respective debtors to file an amended Form B22C that provides a secured debt payment deduction on Line 47 that is in accordance with this decision. If they deem it appropriate, the debtors in each case may also file amended plans. All such amendments shall be filed within 21 days of the entry of this order on the docket.

# # #

18

Case 07-12779    Doc# 35    Filed 08/20/08    Page 18 of 18